**In re SCIOTO CONSERVANCY DISTRICT.**

Court of Common Pleas of Ohio,
Marion County.

No. 98 MS 0008.

Decided July 28, 1999.

*Jim Slagle,* Marion County Prosecuting Attorney, and *Lawrence H. Babich,* Assistant Prosecuting Attorney, for Marion County Board of Commissioners et al.

*Betty D. Montgomery,* Attorney General, and *Margaret A. Malone,* Assistant Attorney General, for the Ohio Environmental Protection Agency et al.

## I Prologue

RICHARD M. ROGERS, Judge.

On May 5, 1999, this matter came on for hearing on the petition filed by the Marion County Board of Commissioners requesting the establishment of a conservancy district pursuant to R.C. Chapter 6101.

The court has previously reviewed the petition as to the form and content required by R.C. 6101.05, and has given notice to the appropriate agencies as required by R.C. 6101.061. The clerk of this court has published notice of this hearing as required by R.C. 6101.08 and 6101.01.

Approximately forty-five members of the public were present for the hearing. The proceedings were conducted in the format of a public hearing in order to allow comment by all interested persons.

The court first recognized the petitioners' counsel, who called on various residents of the affected areas to speak as to the annual loss of crops, loss of acreage, and other damages caused by annual flooding along the Scioto River in Marion County.

The court next heard from Assistant Attorney General Margaret A. Malone, appearing on behalf of the Director of Environmental Protection for the state of Ohio and the Ohio Environmental Protection Agency. Malone stated that the director was not opposing the creation of a district, but rather was appearing to offer information to the court and the public.

Malone also called upon staff members of the Ohio Environmental Protection Agency to speak on environmental impact. Agency staff members also addressed the issue of federal and state permits and oversight that would be required preliminary to initiating, and during the progress of, any actual work or improvements on the river.

The court then permitted comments from any and all persons in attendance. Those persons speaking included persons who reside in Marion County but not within the affected territories. Other speakers, who did not claim ownership of property within the proposed district or even in Marion County, expressed concerns about potential negative effects downstream of the affected territories.

Some speakers offered photographs and written materials, all of which were received and reviewed by the court, and which have been retained as a part of the record of this proceeding. A letter was received from an organization known as the Scioto River Valley Federation. That letter has been retained with the materials received from speaker Steve Phillips, who asserted an affiliation with that organization.

The petition in this matter asserted that a map had been attached to the petition. There was no map attached. However, subsequent to the hearing, the petitioners filed with the clerk a map which depicts the territories to be included in the proposed conservancy district.

Proponents of the proposed district included all three members of the Marion County Board of Commissioners, trustees from townships located within the affected territory, and the village administrator of a municipality located within the proposed district. All spoke of the annual damages caused by flooding, and some specifically expressed the opinion that the benefits would outweigh the costs.

## II  The Law

### A.  General

"The conservancy act, as found in volume 104 O.L., 13 *et seq.*, which is entitled 'An act to prevent floods, to protect cities, villages, farms and highways from inundation, and to authorize the organization of drainage and conservation districts,' is a valid exercise of the police power, under the inherent sovereign legislative power of the state, and particularly under the conservancy amendment of the Ohio Constitution, known as Article II, Section 36, as adopted September, 1912." *Miami Cty. v. Dayton* (1915), 92 Ohio St. 215, 110 N.E. 726, paragraph three of the syllabus.

R.C. 6101.08 specifically sets forth what is required of the court at a hearing on a petition to create a conservancy district. This section further directs the court

as to the necessary elements of a decree, in the event that the court finds that a conservancy district should be established:

"Upon the hearing, if it appears that the purposes of section 6101.01 to 6101.84, inclusive, of the Revised Code, would be subserved by the creation of a district, the court, after disposing of all objections as justice and equity require, shall by its findings, duly entered of record: adjudicate all questions of jurisdiction; determine that the organization of the district for the purposes for which it is being organized, and that the surveys, plans, appraisals of benefits and damages, estimates of cost, land options, and the preparation of an official plan will benefit the area within the territorial boundaries of the district; declare the district organized; give it a corporate name by which in all proceedings it shall thereafter be known. * * *

"In such decree, the court shall designate the place where the office or principal place of business of the district shall be located * * *." R.C. 6101.08.

In brief, before the court may enter a decree establishing a conservancy district, the court must adhere to the following steps, listed here in the order in which they appear in the statute:

(1) Make a general determination that the purposes of sections 6101.01 to 6101.84, inclusive, of the Revised Code, would be subserved by the creation of a district.

(2) Dispose of all objections.

(3) State the court's findings as to jurisdiction.

(4) State the court's findings as to benefit to the district.

(5) Declare the district organized.

(6) Specify the name of the district, and

(7) Designate the location of the principal place of business for the district.

### B. Required findings and contents of a decree

1. *Subserving the purposes of R.C. Chapter 6101*

■ R.C. 6101.08 begins with the language, "if it appears that the purposes of section 6101.01 to 6101.84, inclusive, of the Revised Code, would be subserved by the creation of a district." The court interprets this language to require that a general determination be made by the court as to whether the creation of a conservancy district would subserve (promote or advance) the purposes of R.C. Chapter 6101. If the court does not find affirmatively on this issue, the petition must be dismissed.

The purposes of R.C. Chapter 6101 are not specifically defined, except as to the enumerated purposes for which conservancy districts may be established, and as set forth in R.C. 6101.04(A) through (I). However, the petition must allege "the necessity for the proposed work and that it will be conducive to the public health, safety, convenience, or welfare." R.C. 6101.05.

Further; R.C. 6101.05, by its language, requires that the territory of the district be "so situated that the public health, safety, convenience, or welfare will be promoted by the organization as a single district of the territory described." It is therefore reasonable to conclude that the promotion of "the public health, safety, convenience or welfare" is the major thrust, or purpose, of R.C. Chapter 6101.

The issue then arises as to the burden of proof that the petitioners must meet to prevail on their request for the establishment of a conservancy district. This being a civil matter, and no other standard being demanded by the language of R.C. Chapter 6101, the court finds the standard to be a preponderance, or the greater weight of the evidence.

## 2. *Disposing of objections*

R.C. 6101.08 requires the court to dispose of all objections "as justice and equity require." The procedure for raising objections is also dictated by R.C. 6101.08:

"Any owner of real property in a proposed district who individually has not signed such a petition and who wishes to object to the organization and incorporation of a said district shall, on or before the date set for the cause to be heard, file his objections to the organization and incorporation of such district. Similarly, objections may be filed by any public corporation which has not signed such petition. Such objections shall be limited to a denial of the statements in the petition, and shall be heard by the court as an advanced case without unnecessary delay."

This language clearly limits who has standing to object to the creation of conservancy districts to any "owner of real property in a proposed district," and any "public corporation" that has not signed the petition. It also limits the substance of any objections to the petition to "a denial of the statements in the petition." It further requires that objections be filed with the court "on or before" the date of the hearing.

## 3. *Jurisdiction*

R.C. 6101.08 requires that the court "shall by its findings * * * adjudicate all questions of jurisdiction."

■ There is no requirement in R.C. Chapter 6101 that conservancy districts be limited by, nor coextensive with, the preexisting boundaries of other public corporations or political subdivisions. R.C. 6101.07 does provide that once a determination has been made that a sufficient petition has been filed, notice shall be given to "the court of common pleas of each county included in whole or in part within the proposed conservancy district." If more than one county is included, a judge from the court of common pleas of each county must participate as one court.

### 4. *Necessity of the work and benefit to the district*

R.C. 6101.08 further requires that the court "shall by its findings * * * determine that the organization of the district for the purposes for which it is being organized, and that the surveys, plans, appraisals of benefits and damages, estimates of cost, land options, and the preparation of an official plan will benefit the area within the territorial boundaries of the district."

A cursory reading of this lengthy and complex phrase might suggest that multiple findings are included, and that it presupposes the submission of plans, appraisals, and estimates. The court was initially concerned that the proponents of the conservancy district offered no evidence as to the specifics of the requested works or improvements, and that no estimates of costs have been offered. However, reading this section *in para materia* with the rest of R.C. Chapter 6101, the court determined those concerns to be premature.

The court believes that the section at issue simply defines multiple components of a single finding, which is, that the organization of a district will "benefit the area." This determination the court equates with the allegation, required in the petition, that the work or improvements are "necessary" and will be "conducive to the public health, safety, convenience, or welfare" of the district. R.C. 6101.05.

"The conservancy act providing what the petition must contain, it follows that upon the hearing the court must find the allegations of the petition to be true; that is, 'The necessity for the proposed work and that it will be conducive to the public health, safety, convenience or welfare.'" *Miami Cty. v. Dayton*, 92 Ohio St. at 226, 110 N.E. at 729.

The court further interprets the reference in R.C. 6101.08 to "surveys, plans, appraisals of benefits and damages, estimates of cost, [and] land options" as items/matters/components to be obtained, prepared, and considered during the preparation, and during the process of adoption, of the official plan, and as intended to occur subsequent to the creation of the district. R.C. 6101.13 provides that the official plan is to be filed "within two years from the date of the order establishing the district," which further confirms that much groundwork is required before an official plan is adopted.

8

It would further appear that prior to the creation of a district there is no entity to prepare plans, surveys, estimates of costs, etc. No one has suggested to this court that any public entity would have the responsibility of preparing such plans or estimates, or have the authority to expend public funds for those purposes.

■ The court is therefore satisfied that the existence of a prepared plan, with detailed descriptions of proposed works and estimates of costs, is not a precondition to the creation of a conservancy district. This conclusion is further supported by R.C. 6101.45, which provides for a preliminary assessment based upon "an estimate of the amount of money the district will need to pay expenses of organization, for surveys and plans, appraisals, estimates of cost, land options and other incidental expenses."

### 5. Declaration of establishment

If the court makes the affirmative finding that the creation of a conservancy district would subserve (promote or advance) the purposes of R.C. Chapter 6101, and if the court is able to dispose of all objections, the court must declare the district organized.

### 6. Name of district

The petition is required to specify a proposed name for the district, which should be adopted by the court in its decree, unless the court, for good cause shown, finds the proposed name to be inappropriate. See R.C. 6101.05.

### 7. Designation of location of office

Finally, the court is required to "designate the place where the office or principal place of business of the district shall be located, which shall be within the corporate limits of the district if practicable, and which may be changed by order of court." R.C. 6101.08.

### III  Findings and conclusions

### A.  Purpose, necessity, and benefit

The court finds that the testimony of the proponents of the petition has made it abundantly clear that prevention of floods is their primary goal. R.C. 6101.04(A). The testimony also indicated that in addition to preventing floods, and possibly as a method of controlling floods, the regulating of stream channels may be desired, which should include removal of debris. R.C. 6101.04(B) and (E).

■ The witnesses described the annual loss of crops that occurs because of flooding. Testimony also described some actual loss of farm acreage due to constant flooding and changes in the channel of the Scioto River due to flooding

and accumulations of debris. The testimony of property owners and township trustees confirmed the necessity of removing debris that restricts the flow of water, causing flooding and erosion. This conclusion was further supported by photographs of log jams and other accumulations of debris.

The testimony received indicated that the actual work or improvements contemplated as necessary may not include all the purposes stated in the petition. However, it is assumed that since an official plan has not yet been prepared, the exact work required or feasible is not yet known. Elimination of statutorily permitted purposes from the work allowed in a decree would preclude later inclusion in an official plan, unless the directors choose to amend the petition. It is therefore logical, and in the best interests of the district, for the stated purposes of the district to be more inclusive, rather than less inclusive, yet not arbitrarily so. Any purpose included in a decree must be supported by some evidence.

The preparation of an official plan will clarify what improvements are feasible, establish estimates of project costs, and define the expected benefits to property and estimates of damage to property. With that information, the directors of the conservancy district can determine whether such projects should be implemented.

The property owners of the district, and others, are protected against inclusion of unnecessary or unreasonable work in the final official plan by the requirements of review and approval by various federal and state agencies, mandatory public hearings before the conservancy district board of directors, and a final hearing before the conservancy court.

After due consideration of all comments and materials submitted, the court finds the testimony as to annual damage and need for flood prevention to be uncontroverted, and finds by the greater weight of the evidence:

1. that the creation of a conservancy district will subserve, or advance, the purposes of sections 6101.01 to 6101.84, inclusive, of the Revised Code;

2. that the proposed work of preventing floods, controlling floods, regulating stream channels, and reclaiming or filling wet and overflowed lands is necessary; and,

3. that the organization of a conservancy district for these limited purposes, and the preparation of surveys, plans, appraisals of benefits and damages, estimates of cost, land options, and the preparation of an official plan, will benefit the area within the territorial boundaries of the proposed district.

## B. Objections

The court finds that no written objections were filed pursuant to the statutory procedure on or before the date set for the hearing. The court further finds that

there were no objections raised to the establishment of a district by any person who claimed to be an owner of real property within the territorial boundaries of the proposed district, nor any objections by any public corporation.

The court further finds that there were no objections that denied the statements contained in the petition, with the exception that it was alleged that some enumerated purposes may not be necessary.

Because no objections were filed prior to hearing, the petitioners objected to the court permitting comments from any person in opposition to the petition. Petitioners further objected to comments from any person who does not claim ownership of real property within the territorial boundaries of the proposed district.

R.C. 6101.08 requires the court to dispose of all objections "as justice and equity require." Therefore, the court, exercising its inherent authority and discretion, chose to permit general comments, allowing every person present the opportunity to be heard, without limitation on subject matter, place of residence, or ownership of property. Accordingly, the objections of the petitioners were overruled.

██ There were concerns expressed that the purposes stated in the petition are more broad than necessary, since the petition stated every possible improvement permitted by the statute. The court finds that not all proposed purposes stated in the petition were supported by the testimony, but that several purposes were supported, and that to the extent that the purposes were supported the petition should be allowed.

There were concerns expressed that improvements and work on the river would cause a negative impact or adverse consequences downstream. The court finds that such concerns are not material, because such objections are not permitted by the statute. Further, the individuals that expressed these concerns did not claim ownership of real property within the boundaries of the proposed district, and, therefore, those individuals do not have standing to object to the establishment of the proposed conservancy district. Also, the objections were not filed with the court prior to the scheduled hearing.

██ However, the court further finds that had the concerns about potential downstream effects been material and properly filed, these concerns were adequately addressed by the testimony of the staff of the Ohio Environmental Protection Agency. Agency staff noted that the impact of any proposed work on the river within the district must be reviewed and approved by several agencies, including the Army Corp of Engineers, that federal and state permits would be required, and that the process of obtaining such permits would require the

investigation and evaluation of the impact that the work will have on all affected areas, including areas downstream of the proposed improvements.

"Many other objections are noted in the numerous briefs, but in the main they are not germane to a judicial inquiry. They should have been addressed to the Legislature * * *. This court has nothing to do with the wisdom or unwisdom of the policy involved in the statute. Its duty is ended when it determines * * * whether or not the proceedings under the statute have been regular and are agreeable thereto." *Miami Cty. v. Dayton,* 92 Ohio St. at 236, 110 N.E. at 732.

Finally, the court notes that R.C. Chapter 6101 provides for the protection of the due process rights of all property owners and public corporations affected by projects of conservancy districts. The board of appraisers "shall appraise the lands or other property within and outside the district to be acquired for rights of way, reservoirs, and other works of the district, and shall appraise all benefits and damages accruing to all lands within or outside the district and all benefits accruing to public corporations as entities by reason of the execution of the official plan." R.C. 6101.27.

R.C. 6101.29 speaks specifically to land outside the district that may be affected and, states: "If the board of appraisers of a conservancy district finds that lands or other property not embraced within the boundaries of the district will be affected by the proposed improvement, or should be included in the district, it shall appraise the benefits and damages to such land, and shall file notice in the court of the appraisal." Other sections of R.C. Chapter 6101 provide for notice, public hearings, and court review of all improvements, appraisals, and assessments. R.C. 6101.27 through 6101.43 specifically provide for appraisals and determination of compensation for damages to property, including the exercise of eminent domain.

"Throughout the entire act ample provision is made for any objector to appear, whether he is a party to the record or not, either before the court at the time of organization, or before the board of directors after the organization, or the board of appraisers, and present his objections, either as to his being within the district, as provided by Section 29, which he may do after the district is created, or as to the amount of assessment upon his lands, or as to any other right that he may believe to have been violated, and have the same heard and determined.

"In this view of the case it is difficult to seriously point out where and how there has not been accorded to the private citizen, as well as to the public, every substantial consideration of his rights as recognized by the phrase 'due process of law.'" *Miami Cty. v. Dayton,* 92 Ohio St. at 226–227, 110 N.E. at 729–730.

Accordingly, the court finds that all stated objections, material or not, have been adequately addressed by testimony, statute, or case law, and that all

property owners are adequately protected, whether the property is located within the proposed district or outside of the territorial boundaries of the proposed district.

## C.   Jurisdiction

The court finds that all of the territories described in the petition are located within the territorial limits of Marion County and the Scioto River watershed, and that the Court of Common Pleas of Marion County has jurisdiction of the subject matter and affected territories.   The court further finds that there is no concurrent jurisdiction with any other court.

Therefore, " '[t]he court now here finds that it hath jurisdiction of the parties to and of the subject matter of this proceeding.' "   R.C. 6101.03(A).

## D.   Name

The proponents have requested that the district be given the name of Scioto Conservancy District.   There have been no objections to the name, and the court finds it should be adopted.

## E.   Location of place of business

The court finds that since the petition was filed by the Marion County Board of Commissioners, the place of business of the Scioto Conservancy District shall be located at the Marion County Administration Building, currently located at the Marion County Courthouse, 100 North Main Street, Marion, Ohio, 43302.   After directors have been appointed, they may petition the court for a different location as they deem appropriate.

Judgment to be prepared accordingly.

*So ordered.*